IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PNC EQUIPMENT FINANCE, LLC, a Delaware limited liability company, as successor to NATIONAL CITY COMMERCIAL CAPITAL CORPORATION,<br><br>        Plaintiff,<br><br>    v.<br><br>CALIFORNIA FAIRS FINANCING AUTHORITY, a California joint powers authority; 15TH DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; 18TH DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; 21ST DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; 26TH DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; 27TH DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; 30TH DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; EL DORADO COUNTY FAIR ASSOCIATION, INC., a California corporation; and MADERA COUNTY LIVESTOCK ASSOCIATION, a California corporation,<br><br>        Defendants.<br>_____<br><br>AND RELATED CROSS-CLAIMS AND COUNTER-CLAIMS.<br>_____ | 2:11-cv-02019-GEB-CKD<br><br><u>ORDER</u> |

Defendants 15th District Agricultural Association ("15th DAA"); 21st District Agricultural Association ("21st DAA"); 26th District Agricultural Association ("26th DAA"); 27th District Agricultural Association ("27th DAA"); 30th District Agricultural Association ("30th DAA"); and California Fair Financing Authority ("CFFA") (collectively, "Defendants") move for dismissal of Plaintiff's First Amended Complaint ("FAC") under Federal Rule of Civil Procedure ("Rule") 12(b)(1). Defendants argue the FAC should be dismissed because the requirements for diversity jurisdiction are not satisfied and Plaintiff's claims are not ripe. Defendants also seek dismissal of the FAC under Rule 12(b)(6). Plaintiff opposes the motions.

## I. LEGAL STANDARD

**A. Rule 12(b)(1)**

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Id.

Here, Defendants argue they "challenge jurisdiction on the basis of [Plaintiff's] allegations and on extrinsic factual evidence[.]" (Defs.' Mot. to Dismiss ("Mot.") 7:7.) However, the gravamen of Defendants' jurisdictional attack is comprised of their arguments that "Plaintiff's Case Does Not Meet the Requisite Amount in Controversy" and "Diversity of Citizenship Does Not Exist." Id. 7:17 & 8:8. Since the motion attacks the truth of Plaintiff's allegations, Defendants' attack is factual.

1  When "[f]aced with a factual attack on subject matter
2 jurisdiction,

> "the trial court may proceed as it never could under Rule 12(b)(6) . . . . [N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist."

Thornhill Pub. Co., Inc. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)).

**B. Rule 12(b)(6)**

Decision on Defendants' Rule 12(b)(6) dismissal motion requires determination of "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are

3

1  insufficient to defeat a motion to dismiss." Id. (citation and internal
2  quotation marks omitted); see also Iqbal, 556 U.S. at 678 (quoting
3  Twombly, 550 U.S. at 555) (stating "[a] pleading that offers 'labels and
4  conclusions' or 'a formulaic recitation of the elements of a cause of
5  action will not do'").

## II. PLAINTIFF'S ALLEGATIONS

This case concerns a lease for solar equipment between Plaintiff and CFFA, and agreements regarding use of the solar equipment between CFFA and several California agricultural, livestock, and fair associations ("Individual Fairs"[1]). Plaintiff alleges that "[o]n or about June 2, 2006, [Plaintiff's predecessor in interest,] National City Commercial Capital Corporation ('National City'), as lessor, and [CFFA], as lessee, entered into [a] Master Photovoltaic Equipment Lease-Purchase Agreement ('[Master] Lease')[.]" (FAC ¶ 13.) Plaintiff alleges that under the Master Lease, "National City agreed to lease [the solar equipment] to [CFFA for use by the Individual Fairs] . . . and [CFFA] agreed . . . to pay National City periodic installments of principal and interest[.]" Id. "To secure its obligations to National City . . . , [CFFA] granted National City a first priority security interest in, among other things, the Use Agreements and User Fees[.]" Id. ¶ 14.

Plaintiff alleges that "National City agreed to finance a total of [$18,255,295.14] for the acquisition" of the equipment, and "[CFFA] agreed to repay that amount, with specified interest thereon in accordance with the terms of an amortization schedule[.]" Id. ¶¶ 16, 41 & 46. Plaintiff alleges that in July and August 2006, each Individual

---

[1] The term "Individual Fairs" includes the three non-moving Defendants, which also allegedly entered into agreements with CFFA at issue in this case.

4

Fair entered into a Use Agreement with CFFA, under which "[CFFA] granted the right to use a designated portion of the [e]quipment to each [Individual Fair] in return for periodic payments of principal and interest (the 'User Fees')." Id. ¶¶ 14, 17, 21, 25, 29, 33, 37, 41 & 46. Plaintiff alleges that under the Use Agreements, each Individual Fair "acknowledged that [CFFA] had pledged to National City all of [CFFA's] rights and interest under [the Use Agreements], including . . . the right to receive the User Fees," and that each Individual Fair consented to this term of the agreement. Id. ¶¶ 18, 22, 26, 30, 34, 38, 43 & 47.

Plaintiff alleges "[CFFA] has breached the [Master] Lease by . . . failing and refusing to make [payments] . . . for the months of March 2011 through July 2011." Id. ¶ 50. Plaintiff alleges that under "Section 20 of the [Master] Lease, upon an event of default, [P]laintiff has the right to . . . collect the User Fees owing from [Individual Fairs] to [CFFA]." Id. ¶ 51. Plaintiff further alleges that "[o]n or about May 9, 2011, [it] transmitted written notice to [each Individual Fair] of [CFFA's] default and of [the Individual Fair's] obligation to pay the User Fees directly to Plaintiff." Id. ¶¶ 54, 63, 72, 81, 90, 99, 108 & 117. Plaintiff alleges the Individual Fairs have "failed and refused, and continue[] to fail and refuse, to pay the User Fees to [P]laintiff." Id. Plaintiff further alleges "[CFFA] has interfered with [P]laintiff's right to collect the User Fees from the [Individual Fairs] by, among other things, directing them to continue to pay the User Fees to [CFFA.]" Id. ¶ 125.

Plaintiff alleges specific performance and declaratory relief claims against each Individual Fair, seeking an order directing the Individual Fairs to pay future User Fees directly to Plaintiff. Plaintiff alleges a breach of contract claim against each Individual

5

Fair and CFFA, seeking damages for User Fees in arrears since March 2011. Plaintiff also alleges an injunctive relief claim against CFFA, seeking "an injunction prohibiting [CFFA] from engaging in any acts of interference with [P]laintiff's enforcement of its remedies under the [Master] Lease and Use Agreements, including . . . collection of the User Fees from the [Individual Fairs]." Id. ¶ 125.

Plaintiff alleges "[j]urisdiction of this matter is based on 28 U.S.C. [§] 1332(a)[(1)]" since "the obligation of . . . [D]efendants to make non-contingent future payments to [P]laintiff . . . exceeds the sum or value of $75,000[.]" Id. ¶ 1. Plaintiff further alleges it is a citizen of Delaware and each Defendant is a citizen of California. Id. ¶¶ 3-12.

### III. DISCUSSION

**A. 12(b)(1) Dismissal Motion**

   **1. Diversity Jurisdiction**

Defendants argue the court lacks subject matter jurisdiction over Plaintiff's claims, since "Plaintiff's case does not meet the requisite amount in controversy" and "[d]iversity of [c]itizenship [d]oes [n]ot [e]xist." (Mot. 7:17 & 8:8.) "The federal court's basic diversity jurisdiction extends to 'all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between . . . [c]itizens of different States.'" Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) (quoting 28 U.S.C. § 1332(a)(1)).

    **i. Amount in Controversy**

Defendants argue "the [amount in controversy requirement] is not met as to the 15th DAA, . . . the 26th DAA, the 27th DAA, [and] the 30th DAA," since "Plaintiff [must] allege[] a controversy that exceeds $75,000 . . . for each . . . defendant, not in [the] aggregate." (Mot.

6

7:20-21 & 8:4-5.) Plaintiff counters that Defendants "completely ignore the equitable claims for declaratory relief, specific performance, and injunctive relief, which seek to enforce [each Individual Fair's] obligation to make non-contingent future payments to [Plaintiff.]" (Pl.'s Opp'n ("Opp'n") 11:13-15.) Plaintiff further argues "[d]iversity jurisdiction exists in actions for equitable relief when the value of the matter involved in [the] litigation exceeds the jurisdictional minimum." Id. 11:17-18.

"'In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.'" Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. 2002) (quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)). Therefore, "[t]he ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (citation omitted).

Here, Plaintiff seeks, *inter alia*, an order directing Individual Fairs to pay future User Fees directly to Plaintiff as they become due. Plaintiff presents evidence supporting its position that the Individual Fairs owe it more than $50,000 per month until 2018. (McAlister Decl. Exs. 12 & 13.) Plaintiff's evidence is sufficient to show that the amount "put in controversy by [its] complaint" exceeds $75,000. Korn, 536 F. Supp. 2d at 1205.

**ii. Diversity of Citizenship**

Defendants also argue the diversity of citizenship requirement is not satisfied, since "Plaintiff is a citizen of California because it has agreed to the jurisdiction and laws of California by registering as

7

a Foreign Corporation doing business in California." (Mot. 8:16-18.) Defendants further argue:

> As a foreign registered entity, [P]laintiff has agreed to avail itself of the laws of the state of California[;] . . . to pay taxes on all of its activities within California[;] . . . and to be held as a resident of this state for jurisdiction purposes. Combining the acceptance of the laws and jurisdiction of California with the practical economic implications of registering as a California Foreign Corporation, [P]laintiff intends to be a citizen of the state.

Id. 8:21-9:18. Plaintiff counters that "Defendants confuse [personal] jurisdiction with the issue of citizenship for diversity purposes" and that their "argument is bereft of any supporting authority[.]" (Opp'n 13:23-25.)

"Diversity jurisdiction under § 1332 requires . . . [that] [P]laintiff[] must be a citizen of a different state than each of the [D]efendants." Allstate Ins. Co. v. Hughes, 358 F.3d 1089, 1095 (9th Cir. 2004). "In cases where entities rather than individuals are litigants, diversity jurisdiction depends on the form of the entity." Johnson, 437 F.3d at 899. Here, Plaintiff is an LLC. The Ninth Circuit has held that "an LLC is a citizen of every state of which its owners/members are citizens." Id. Therefore, Plaintiff's citizenship depends on the citizenship of its "owners/members." Id.

Plaintiff presents evidence that "PNC Bank[, National Association] is a national banking association" and "the sole member of [Plaintiff.]" (Long Decl. ¶ 4.) Under 28 U.S.C. § 1348, "[a]ll national banking associations . . . [are] citizens of the States in which they are respectively located." The Supreme Court has "h[eld] that a national bank, for § 1348 purposes, is a citizen of the State in which its main office, as set forth in its articles of association, is located."

1  Wachovia Bank v. Schmidt, 546 U.S. 303, 307 (2006). Further, "[t]he
2  Ninth Circuit . . . has held that a national bank is located in the
3  State where it maintains its 'principal place of business.'" Guinto v.
4  Wells Fargo Bank, No. CIV. S-11-372, 2011 WL 4738519, at *1 (E.D. Cal.
5  Oct. 5, 2011) (citing Am. Surety Co. v. Bank of Cal., 133 F.2d 160, 162
6  (9th Cir. 1943)).

7      Plaintiff presents evidence that PNC Bank, National
8  Association designated Wilmington, Delaware as its main office in its
9  articles of association and that "its principal place of business [is]
10 in the Commonwealth of Pennsylvania, with its headquarters in
11 Pittsburgh, Pennsylvania." (Long Decl. ¶ 4 & Ex. 2.) This evidence
12 demonstrates Plaintiff is a citizen of Delaware and Pennsylvania;
13 Defendants do not dispute that each Defendant is a citizen of
14 California. Therefore, Plaintiff has satisfied its burden of
15 demonstrating diversity of citizenship.

16  **2. Ripeness**

17     Defendants argue "Plaintiff's case is not ripe" since "there
18 is no actual controversy between [Plaintiff] and the [I]ndividual
19 Fairs[.]" (Mot. 4:15-26.) Defendants further argue that "[u]ntil the
20 [Master] Lease is determined to be valid and enforceable, [Plaintiff's]
21 claims for Specific Performance, Declaratory Relief and Injunctive
22 Relief, . . . [in which it seeks payments allegedly due under the Use
23 Agreements], are simply not at issue." Id. 4:26-5:2. Plaintiff counters
24 that "the enforceability of the agreement, to the extent Moving
25 Defendants have any basis on which to challenge it, will be determined
26 by the Court in this action at trial." (Opp'n 8:13-15.) Plaintiff also
27 argues:

28     [Plaintiff] has alleged [CFFA's] default [under the
    Master Lease], which is the event triggering

9

>
> [Plaintiff's] right to enforce the Use Agreements[;] [each Individual Fair's] refusal to make payment[s] to [Plaintiff;] and the monetary damages that resulted. The harm [Plaintiff] alleges is direct and immediate . . . [and] the claims are ripe for adjudication[.]

Id. 7:28-8:19.

"The ripeness doctrine demands that [a] litigant[] state a claim on which relief can be granted and that litigant['s] asserted harm is 'direct and immediate' rather than speculative or hypothetical." Hillblom v. United States, 896 F.2d 426, 430 (9th Cir. 1990) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 152 (1967)). Here, a reasonable inference can be drawn from Plaintiff's allegations that Plaintiff has suffered and/or will suffer a direct and immediate harm from CFFA's alleged breach of the Master Lease and from the Individual Fairs' alleged refusal to pay User Fees to Plaintiff. Therefore, Plaintiff has demonstrated that its claims are ripe.

**B. 12(b)(6) Dismissal Motion**

    **1. Perfection of Security Interest**

Defendants argue "Plaintiff's [claims] fail because Plaintiff has failed to perfect its alleged security [interest]." (Mot. 6:1-2.) Defendants further argue:

> Pursuant to [California Commercial Code section] 9203, the security interest in collateral does not attach until 1) value is given, 2) the debtor has rights in the collateral and 3) the debtor has authenticated a security agreement which describes the collateral or 4) the collateral is . . . in the possession of the lender . . . .
>
> [Plaintiff's] alleged security interest has never attached to either the Use Agreements or the solar panels . . . [since] the [Master] Lease does not describe the collateral . . . [and Plaintiff] has never possessed either the Use Agreements or the solar panels.

10

1  Id. 6:13-25. Plaintiff counters:

2
>    Although the [Master] Lease does specifically
>    describe the Use Agreements, the creation and
3
>    perfection of the security interest in such
>    agreements are not governed by the Commercial Code.
4
>    Section 9109(d)(17) provides that Division 9 of the
>    Commercial Code[, which governs secured
5
>    transactions, does] not apply to transfers "by a
>    government or governmental unit." Rather, the
6
>    Government Code governs grants of security
>    interests in public property, as recognized in
7
>    Section 4.7 of the [Master] Lease, which provides
>    . . . [in relevant part]:
8
> > (a) Each of the Use Agreements . . .
9
> > [and] the User Fees . . . are hereby
> > irrevocably pledged to the punctual
10
> > payment of the Rent Payments and other
> > amounts that [CFFA] is obligated to pay
11
> > . . . . In accordance with Section 5451
> > . . . of the California Government Code,
12
> > this pledge shall constitute a first and
> > prior lien on and security interest in
13
> > all of the Use Agreements . . . [and] the
> > User Fees . . . .
14

15  (Opp'n 9:15-28 (quoting Master Lease at 7, FAC Ex. 1).) Defendants do

16  not address this argument in their reply brief.

17           Under California Government Code section 5451 ("section

18  5451"):

19
>    [C]ollateral [pledged by any public body to secure
>    payment of indebtedness] shall immediately be
20
>    subject to the pledge, and the pledge shall
>    constitute a lien and security interest which shall
21
>    immediately attach to the collateral and be
>    effective, binding, and enforceable . . . without
22
>    the need for any physical delivery, recordation,
>    filing, or further act.
23

24           Since Plaintiff alleges CFFA pledged the right to collect the

25  User Fees from the Individual Fairs as collateral to Plaintiff, and no

26  further action must be taken for collateral pledged by a public body to

27  be enforceable under section 5451, a reasonable inference can be drawn

28

11

from Plaintiff's allegations that Plaintiff has an enforceable security interest.

### 2. Attorney's Fees

Defendants argue "Plaintiff . . . has asserted no basis for attorney's fees under any statute or contract." (Mot. 10:15-16.) Plaintiff counters that "the Use Agreements between [CFFA] and the [Individual Fairs] contain a provision for attorneys' fees." (Opp'n 14:14-15.) Plaintiff alleges in the FAC:

> Pursuant to Section 12 of . . . [each] Use Agreement, the prevailing party in any controversy, claim or dispute arising under such agreement is entitled to recover its expenses, costs and reasonable attorneys' fees from the losing party. By reason thereof, plaintiff is entitled to its attorneys' fees incurred in instituting and prosecuting this action.

(FAC ¶¶ 57, 66, 75, 84, 93, 102, 111, 120, 137, 147, 157, 167, 177, 187, 197 & 207.) Therefore, Plaintiff has alleged a basis in contract for the award of attorney's fees.

## IV. CONCLUSION

For the stated reasons, Defendants' dismissal motions are denied.

Dated: May 23, 2012

_____
GARLAND E. BURRELL, JR.
United States District Judge

12