IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PNC EQUIPMENT FINANCE, LLC, a Delaware limited liability company, as successor to NATIONAL CITY COMMERCIAL CAPITAL CORPORATION,<br><br>           Plaintiff,<br><br>      v.<br><br>CALIFORNIA FAIRS FINANCING AUTHORITY, a California joint powers authority; 15TH DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; 18TH DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; 21ST DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; 26TH DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; 27TH DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; 30TH DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; EL DORADO COUNTY FAIR ASSOCIATION, INC., a California corporation; and MADERA COUNTY LIVESTOCK ASSOCIATION, a California corporation,<br><br>           Defendants.<br>_____<br><br>AND RELATED CROSS-CLAIMS AND COUNTER-CLAIMS.<br>_____ | 2:11-cv-02019-GEB-CKD<br><br>ORDER |

1

Plaintiff PNC Equipment Finance, LLC ("PNC") moves under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for dismissal of Defendant El Dorado County Fair Association, Inc.'s ("El Dorado") counterclaims. PNC argues El Dorado's counterclaims are barred by the statute of limitations and fail to state viable claims. PNC also moves under Rule 12(f) for an order striking fifteen of El Dorado's thirty-two affirmative defenses, arguing the defenses are insufficient as a matter of law to provide PNC with fair notice of what is claimed. El Dorado filed an opposition brief.

**I. LEGAL STANDARDS**

**A. Rule 12(b)(6)**

Decision on PNC's Rule 12(b)(6) dismissal motion requires determination of "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Id. (citation and internal

2

quotation marks omitted); see also Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555) (stating "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'").

**B. Rule 12(f)**

Rule 12(f) prescribes: "The court may strike from a pleading an insufficient defense . . . ." "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). "To determine that a defense is insufficient as a matter of law, the court must be convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." United States v. Global Mortg. Funding, Inc., No. SACV 07-1275, 2008 WL 5264986, at *2 (C.D. Cal. May 15, 2008) (internal quotation marks and citations omitted).

"The procedural sufficiency of a pleaded . . . defense in federal court is governed by the federal rules, even though the defense relied on may be a state defense." Wyshak v. City Nat'l Bank, 607 F.2d 824, 827 (9th Cir. 1979). Rule 8(c) "governs the pleading of an affirmative defense." J & J Sports Prods., Inc. v. Gidha, No. CIV-S-10-2509, 2012 WL 537494, at *2 (E.D. Cal. Feb. 17, 2012). "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." Wyshak, 607 F.2d at 827.

//
//

## II. BACKGROUND

This case concerns several related agreements concerning the lease of solar equipment between a finance company, PNC; a joint powers authority formed by California counties and agricultural district associations, California Fairs Financing Authority ("CFFA"); and several California agricultural, livestock, and county fair associations ("Individual Fairs"), including El Dorado. El Dorado "incorporates [into its counterclaims] as though set forth in full . . . the allegations of [PNC's First Amended Complaint ('FAC')] . . . solely for the purpose of illustrating the nature of [the claims] in this matter[.]" (El Dorado's Countercl. ("Countercl.") ¶ 5.) Relevant allegations from PNC's FAC provide context for decision on the motions.

**A. Master Lease and Use Agreements**

In June 2006, PNC's predecessor in interest, National City Commercial Capital Corporation ("National City"), and CFFA entered into an agreement ("Master Lease"), in which National City agreed to lease solar equipment to CFFA for use by the Individual Fairs; and CFFA agreed to "pay National City periodic installments of principal and interest[.]" (PNC's First Am. Compl. ("PNC's FAC") ¶¶ 13-14.) "[T]o secure [CFFA's] obligations to National City under the [Master] Lease, [CFFA] granted National City a first priority security interest in, among other things, the Use Agreements and User Fees [from the Individual Fairs.]" Id. ¶ 14.

"'Use Agreements' refer to agreements between [CFFA] and [Individual Fairs], . . . pursuant to which [CFFA] granted the right to use a designated portion of the [e]quipment to each [Individual Fair] in return for periodic payments of principal and interest ('User Fees')." Id. "The [s]econd full paragraph of [each] Use Agreement expressly

incorporates the [Master Lease] by reference." (Countercl. ¶ 12.) "Section 1(b) of the Use Agreement states that the Use Agreement and [each Individual Fair's] 'rights [t]hereunder shall at all times be subject and subordinate to the [Master Lease], without the need for any further act or agreement by [an Individual Fair].'" Id.

**B. El Dorado's Use Agreement**

"In or about January 2005, [El Dorado] began having discussions with Tom Baker, an Executive Officer of [CFFA] . . . regarding the possibility of installing [solar] equipment at the [El Dorado County F]airgrounds[.]" Id. ¶ 7. "On several occasions between January 2005 and August 9, 2006, Tom Baker represented to [El Dorado] that contracts concerning [the installation of solar equipment at the El Dorado County Fairgrounds] would require [El Dorado] to enter into a lease-purchase agreement whereby [El Dorado] would lease the equipment for a contract term of 10 years, and . . . would own the . . . equipment" at the end of the contract term. Id. ¶ 8.

"On or about July 3, 2006, [CFFA] sent [El Dorado] a cover letter enclosing both the [Master Lease] and the [Use Agreement] between [CFFA] and [El Dorado]." Id. ¶ 10. "In that letter, [CFFA] confirm[ed] prior verbal representations . . . that [El Dorado] would own the [solar] equipment after the contract term." Id. El Dorado alleges it executed two identical Use Agreements in July and August 2006 (collectively, "Use Agreement"), "based on [CFFA's] verbal and written representations that [El Dorado] would own the equipment after the contract term, effectively purchasing the equipment over ten years[.]" Id. ¶¶ 11-12.

//
//

### C. PNC's FAC

PNC alleges CFFA breached the Master Lease beginning in March 2011 "by . . . failing and refusing to make" the required payments. (PNC's FAC ¶ 50.) PNC further alleges that under "Section 20 of the [Master] Lease, upon an event of default, [PNC] has the right to . . . exercise its rights and remedies under the Use Agreements with respect to [the Individual Fairs], including . . . the right . . . to collect the User Fees owing from . . . El Dorado . . . to [CFFA]." Id. ¶ 51.

PNC alleges it notified El Dorado in a May 2011 writing that CFFA defaulted under the Master Lease and that under the terms of the Use Agreement and the Master Lease, El Dorado is required to make payments directly to PNC in the event of CFFA's default. Id. ¶ 108. PNC alleges "El Dorado has failed and refused, and continues to fail and refuse, to pay the User Fees to [PNC]." Id. PNC alleges a breach of contract claim against El Dorado, in which PNC seeks damages in an amount representing unpaid User Fees since March 2011. Id. ¶¶ 188-97. PNC also alleges specific performance and declaratory relief claims, in which it seeks an order directing El Dorado to pay future User Fees directly to PNC. Id. ¶¶ 106-14. PNC alleges similar claims against the other Individual Fairs and CFFA.

### D. El Dorado's Counterclaims

El Dorado alleges in its counterclaims that "[a]t all relevant times until mid-November 2011, [El Dorado] understood it would own the [solar] equipment, which was permanently installed in the roof at its fairgrounds, at the end of the Use Agreement term." (Countercl. ¶ 18.) El Dorado alleges that "[c]ontrary to the multiple [verbal and written] representations by [CFFA] . . . that [El Dorado] would own the equipment after the 10 year contract term, both the [Master Lease] and the Use

Agreement state otherwise." Id. ¶ 13. El Dorado further alleges "[it] would not have executed the Use Agreement had it known that . . . [it] would not own the . . . equipment at the end of the contract term." Id. ¶ 18.

El Dorado seeks in its counterclaims rescission of the Use Agreement on the following grounds: "the consideration for the obligation by [El Dorado] to continue to perform under the [Use Agreement] fails . . . through the fault of both [CFFA] and PNC"; "the public interest will be prejudiced by permitting the [Use Agreement] to stand"; and El Dorado executed the Use Agreement based on a mutual or unilateral mistake regarding a material term. Id. ¶¶ 25-40. El Dorado also alleges a declaratory relief counterclaim in which it seeks "a declaration that the Use Agreement has been rescinded[.]" Id. ¶ 46.

### III. DISCUSSION

**A. Rule 12(b)(6) Dismissal Motion**

PNC argues El Dorado's counterclaims "must be dismissed because [they were] untimely filed." (PNC's Mot. to Dismiss ("Mot.") 5:23.) PNC argues "[t]he statute of limitations for rescission claims . . . requires actions for rescission of written contracts to be filed within four years of accrual." Id. 6:5-7 (citing Cal. Civ. Proc. Code § 337). PNC further argues:

> El Dorado bases its [rescission] claim[s] upon the provisions of the [Master] Lease, which it received on July 3, 2006, and the Use Agreement, which it signed on July 12, 2006 (and again on August 9, 2006). . . . The facts purportedly entitling El Dorado to rescind therefore occurred in July 2006 when it received the agreements. This action was commenced five years later, on July 29, 2011, and the counterclaim[s were] not filed until January 19, 2012.

Id. 6:12-19.

Under California Code of Civil Procedure section 337, "[t]he time [for bringing a rescission claim] begins to run from the date upon which the facts that entitle the aggrieved party to rescind occurred." Cal. Civ. Proc. Code § 337(3). However, "[w]here the ground for rescission is . . . mistake, the time does not begin to run until the discovery by the aggrieved party of the facts constituting the . . . mistake." Id.

PNC argues El Dorado's "[r]escission [counterclaims] based upon two of the four grounds asserted—failure of consideration and [prejudice to the public interest]—[are] time barred by the face of [s]ection 337(3)." (Mot. 6:19-20.) El Dorado does not address this portion of PNC's dismissal motion.

El Dorado alleges in its counterclaims that "the Use Agreement should be rescinded[] pursuant to [California Civil] Code § 1689(b)(2) on the ground that 'consideration for the obligation of the rescinding party fails, in whole or in part, [through] the fault of the party to whom he rescinds.'" (Countercl. ¶ 37 (quoting Cal. Civ. Code § 1689(b)(2)).) El Dorado specifically alleges:

> PNC drafted the contracts at issue in this case and knew or should have known that there would be no incentive for . . . [El Dorado] to enter into this transaction to the extent that the contract documents did not provide for the transfer of ownership of the equipment to [El Dorado] at the end of the contract term.

Id.

El Dorado also alleges "the Use Agreement should be rescinded under [California Civil] Code § 1689(b)(6) on the basis that 'the public interest will be prejudiced by permitting the contract to stand.'" Id. ¶ 38 (quoting Cal. Civ. Code § 1689(b)(6)). El Dorado specifically alleges:

8

> According to the Master [Lease], based on [CFFA's] failure to make monthly payments, PNC can immediately take [possession] and title to the equipment. [Alternatively], at the end of the Use Agreement term, [CFFA], and not [El Dorado], will have title to the equipment. . . . If the Use Agreement is allowed to stand, El Dorado County taxpayers will have effectively paid for an asset not for the County or [El Dorado], but for [CFFA] or PNC.

Id.

The gravamen of these allegations is that the Use Agreement fails to include a provision transferring title to the solar equipment to El Dorado at the end of the Use Agreement term. Therefore, the facts El Dorado alleges "entitle [it] to rescind occurred" in 2006 when El Dorado executed the Use Agreement. Since El Dorado filed its counterclaims in 2012, its rescission counterclaims based on failure of consideration and prejudice to the public interest are time-barred and therefore are dismissed.

PNC argues:

> Rescission under the two remaining grounds—mutual mistake and unilateral mistake—is also barred by the statute of limitations. While Section 337(3) provides that the time on a mistake-based rescission claim does not begin to run until discovery of the mistake, the "discovery rule" requires the party invoking the rule to plead . . . that it exercised due diligence to discover the mistake.

(Mot. 6:21-25.) El Dorado counters that it "has sufficiently alleged when it discovered the facts constituting mistake . . . [since it] alleges '*At all relevant times until mid-November 2011*, [El Dorado] understood it would own the [solar] equipment . . . at the end of the Use Agreement term.'" (Opp'n 3:17-20 (quoting Countercl. ¶ 18) (emphasis in original).) El Dorado argues that "construing this allegation in [its] favor, [El Dorado] has alleged that it discovered the relevant mistake in mid-November 2011." Id. 3:23-24.

9

However, "[t]o rely on the delayed discovery of a claim, '[a] plaintiff whose complaint shows on its face that [its] claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'" Kelley v. Countrywide Home Loans, No. CV F 09-1148, 2009 WL 3489422, at *5 (E.D. Cal. Oct. 26, 2009) (quoting Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 808 (2005)).

El Dorado fails to allege specific facts supporting drawing a reasonable inference that El Dorado was unable to discover before November 2011 that the Use Agreement it executed in 2006 does not contain a provision transferring title to the equipment to El Dorado at the end of the lease term. Therefore, El Dorado's rescission counterclaims based on mutual and unilateral mistake are dismissed.

PNC argues El Dorado's declaratory relief counterclaim is also time-barred, since this counterclaim "is based upon the rescission claim" and "the same four year statute of limitations applies[.]" (Mot. 7:11-12.) El Dorado does not address this portion of PNC's dismissal motion.

"[T]he statute of limitations governing a request for declaratory relief is the one applicable to an ordinary legal or equitable action based on the same claim." Mangini v. Aerojet-Gen. Corp., 230 Cal. App. 3d 1125, 1155 (1991) (citing Maguire v. Hibernia Sav. & Loan Soc'y, 23 Cal. 2d 719, 733 (1944)). Since El Dorado's declaratory relief counterclaim is based on its rescission counterclaim, the declaratory relief counterclaim is time-barred for the reasons stated above and is dismissed.

//

**B. Rule 12(f) Motion to Strike**

PNC seeks an order striking El Dorado's "second through eighth, tenth, . . . twenty-fifth through twenty-eighth, and thirtieth affirmative defenses[,]" arguing "the challenged defenses are insufficient as a matter of law." (Mot. 14:16-27.) PNC also seeks an order striking El Dorado's twenty-first and twenty-second affirmative defenses, arguing these defenses fail to give fair notice to PNC. Id. 19:19-21:9.

   **1. Second Through Seventh, Tenth, and Thirtieth Affirmative Defenses**

PNC argues the "second through seventh, tenth and thirtieth affirmative defense[s] are all based upon El Dorado's assertion that the provisions of the [Master] Lease and the Use Agreement preclude transfer of title to El Dorado at the expiration of the lease term." (Mot. 15:2-4.) PNC argues these defenses "are insufficient as a matter of law[,]" since "the Use Agreement and the [Master] Lease only govern the parties' relationship while [PNC]'s financing is outstanding, and [they] do[] not purport to dictate what happens to the [e]quipment upon expiration of the [lease]." Id. 16:11-21.

However, the gravamen of these affirmative defenses is that the Use Agreement PNC seeks to enforce against El Dorado is unenforceable, and PNC fails to demonstrate that "there are no questions of fact . . . [and] law . . . in dispute" regarding the enforceability of the Use Agreement. Global Mortg. Funding, Inc., 2008 WL 5264986, at *2. Therefore, PNC's motion to strike El Dorado's second through seventh, tenth, and thirtieth affirmative defenses is DENIED.

//
//

### 2. Eighth Affirmative Defense

PNC argues El Dorado's eighth affirmative defense, in which El Dorado alleges "'[PNC] is not a party to the agreement it seeks to enforce against [El Dorado], and there is no privity of contract between [PNC] and El Dorado[,] . . . is insufficient as a matter of law because [PNC's] right to enforce the Use Agreement does not require it to be a party to the agreement." (Mot. 16:24-27.) PNC further argues it "has a security interest in the User Fees payable under the Use Agreement." Id. 17:1-2.

However, PNC alleges in its FAC that "El Dorado breached the [Use Agreement] by failing to pay [PNC] amounts due under such agreement" and PNC "has the right to enforce El Dorado's obligations . . . under the [Use Agreement.]" (PNC's FAC ¶¶ 189 & 195.) Since PNC seeks to enforce El Dorado's obligations under the Use Agreement, PNC has not demonstrated that "under *no* set of circumstances could [El Dorado's lack of privity defense] succeed." Global Mortg. Funding, Inc., 2008 WL 5264986, at *2 (emphasis added). Therefore, PNC's motion to strike El Dorado's eighth affirmative defense is DENIED.

### 3. Twenty-First Affirmative Defense

PNC argues, *inter alia*, that El Dorado's twenty-first affirmative defense, in which El Dorado challenges the enforceability of the Use Agreement, "fails to allege sufficient facts to provide [PNC] with the requisite fair warning of the defense." (Mot. 20:3-4.) El Dorado counters that "[t]his defense is properly pled, especially in light of the abundance of detail provided throughout [El Dorado's] responsive pleading." (Opp'n 19:22-24.)

El Dorado alleges the following in its twenty-first affirmative defense:

12

> [A]ny rights of [PNC] and any obligations of [El Dorado] . . . never matured or became due [or] were never perfected, were or have been discharged or vitiated, [or] . . . are excused because of the failure or non-occurrence of conditions precedent, conditions concurrent, [or] conditions subsequent, thus barring any recovery by [PNC] in whole or in part.

(El Dorado's Ans. 14:20-24.)

However, these conclusory allegations are insufficient to provide PNC with "fair notice of the defense." Wyshak, 607 F.2d at 827; cf. Kohler v. Big 5 Corp., No. 2:12-cv-00500, 2012 WL 1511748, at *4 (C.D. Cal. Apr. 30, 2012) (finding the "fair notice" standard satisfied where the pleading described the condition that allegedly was not satisfied). Therefore, PNC's motion to strike El Dorado's twenty-first affirmative defense is GRANTED.

**4. Twenty-Second Affirmative Defense**

PNC argues El Dorado's twenty-second affirmative defense, in which El Dorado alleges "persons other than [El Dorado]" caused PNC's alleged damages, fails to provide PNC with fair notice of the defense. (Mot. 20:23-21:9.) PNC specifically argues "[i]f El Dorado believes that for some reason it is not required to honor its contractual obligations under the Use Agreement because of the actions of others, those others must be identified, and the nature of their actions specified, to provide [PNC] with fair notice of the defense[.]" Id. 21:5-8. El Dorado counters that "PNC knows of at least two of these 'others'—PNC and CFFA." (Opp'n 20:4-5.)

However, "[t]his defense is not pled with sufficient particularity to give [PNC] fair notice of its basis[, since] . . . [El Dorado] does not indicate who [else] . . . may have caused [PNC's] damages . . . [or] what conduct by . . . third parties allegedly caused

13

the damages." J & J Sports Prods., Inc. v. Mendoza-Govan, No. C 10–05123, 2011 WL 1544886, at *4 (N.D. Cal. Apr. 25, 2011). Therefore, PNC's motion to strike El Dorado's twenty-second affirmative defense is GRANTED.

**5. Twenty-Fifth Affirmative Defense**

PNC argues El Dorado's twenty-fifth affirmative defense, in which El Dorado alleges PNC is not entitled to equitable remedies because adequate legal remedies are available, "is . . . insufficient as a matter of law." (Mot. 21:11-13.) PNC argues that "where a party commits multiple breaches of a contract, specific performance is preferred over the inadequate remedy of repetitive future damage actions." Id. 21:25-26.

"The question [of] whether or not a given remedy at law is adequate is . . . a question of fact[.]" People v. Stafford Packing Co., 193 Cal. 719, 728 (1924). Since PNC has not demonstrated that "there are no questions of fact" regarding the adequacy of any legal remedies, Global Mortg. Funding, Inc., 2008 WL 5264986, at *2, PNC's motion to strike El Dorado's twenty-fifth affirmative defense is DENIED.

**6. Twenty-Sixth Affirmative Defense**

PNC argues El Dorado's twenty-sixth affirmative defense, in which El Dorado alleges "'[t]he agreements alleged in [PNC's FAC] do not represent valid lease agreements under the California Commercial Code[,]'" is insufficient as a matter of law, since "a determination that a given transaction is not a true lease but rather a lease disguised as a security agreement does not affect the enforceability of the challenged agreement." (Mot. 22:6-7 & 23:2-4.)

However, whether an instrument is a lease or a security agreement can be significant in some circumstances. Cf. Triple C.

14

Leasing, Inc. v. All-Am. Mobile Wash, 64 Cal. App. 3d 244, 248 (1976) ("[This] appeal turns on the question whether . . . the instrument was a true lease rather than a security interest."). PNC has not demonstrated that "under no set of circumstances could the defense succeed" in this case. Global Mortg. Funding, Inc., 2008 WL 5264986, at *2. Therefore, PNC's motion to strike El Dorado's twenty-sixth affirmative defense is DENIED.

### 7. Twenty-Seventh Affirmative Defense

PNC argues El Dorado's twenty-seventh affirmative defense "is facially insufficient." (Mot. 23:10-11.) However, El Dorado "stipulates to withdraw this defense" in its opposition brief. (Opp'n 20:24.) In light of El Dorado's withdrawal of its twenty-seventh affirmative defense, PNC's motion to strike this defense is DENIED as moot.

### 8. Twenty-Eighth Affirmative Defense

PNC argues El Dorado's twenty-eighth affirmative defense, in which El Dorado alleges PNC's claims are barred because PNC failed to comply with the California Government Claims Act, is insufficient as a matter of law, since "El Dorado erroneously asserts that [PNC] was required to comply with the claims requirements before filing the original complaint for equitable relief." (Mot. 24:7-9.)

However, PNC fails to demonstrate that "there are no questions of fact . . . [and] law . . . in dispute" regarding the applicability of the California Government Claims Act. Global Mortg. Funding, Inc., 2008 WL 5264986, at *2. Therefore, PNC's motion to strike El Dorado's twenty-eighth affirmative defense is DENIED.

### IV. CONCLUSION

For the stated reasons, PNC's dismissal motion is granted. PNC's motion to strike affirmative defenses is granted in part and

denied in part. El Dorado is granted ten (10) days from the date on which this order is filed in which to file an amended pleading addressing the deficiencies in any dismissed counterclaim or stricken affirmative defense.

Dated: July 11, 2012

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge