IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PNC EQUIPMENT FINANCE, LLC, a Delaware limited liability company, as successor to NATIONAL CITY COMMERCIAL CAPITAL CORPORATION,<br><br>        Plaintiff,<br><br>    v.<br><br>CALIFORNIA FAIRS FINANCING AUTHORITY, a California joint powers authority; 15TH DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; 18th DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; 21st DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; 26th DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; 27th DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; 30th DISTRICT AGRICULTURAL ASSOCIATION, a state institution of the State of California; EL DORADO COUNTY FAIR ASSOCIATION, INC., a California corporation; and MADERA COUNTY LIVESTOCK ASSOCIATION, a California corporation,<br><br>        Defendants.<br>_____<br><br>EL DORADO COUNTY FAIR ASSOCIATION, INC., a California corporation, | 2:11-cv-02019-GEB-CKD<br><br><u>ORDER GRANTING IN PART AND DENYING IN PART CALIFORNIA FAIRS FINANCING AUTHORITY'S MOTION TO DISMISS EL DORADO COUNTY FAIR ASSOCIATION, INC.'S FIRST AMENDED CROSS-COMPLAINT</u> |

```
                 Cross-Complainant,  )
                                     )
            v.                       )
                                     )
CALIFORNIA FAIRS FINANCING           )
AUTHORITY, a California joint        )
powers authority,                    )
                                     )
                 Cross-Defendant.    )
_____)
```

Cross-Defendant California Fairs Financing Authority ("CFFA") moves under Federal Rule of Civil Procedure ("Rule") 12(b)(1) for dismissal of each cross-claim in El Dorado County Fair Association, Inc.'s ("El Dorado") First Amended Cross-Complaint ("FACC"). CFFA argues the court lacks subject matter jurisdiction over each claim, since El Dorado failed to comply with the California Government Claims Act ("Government Claims Act"). CFFA also argues El Dorado's rescission and declaratory relief cross-claims are not ripe. CFFA also moves under Rule 12(b)(6) for dismissal of each cross-claim in El Dorado's FACC, arguing El Dorado fails to state viable claims. El Dorado filed an opposition brief.

**I. LEGAL STANDARDS**

**A. Rule 12(b)(1)**

"The ripeness doctrine prevents courts, through avoidance of premature adjudication, from entangl[e]ment in theoretical or abstract disagreements that do not yet have a concrete impact on the parties." 18 Unnamed John Smith Prisoners v. Meese, 871 F.2d 881, 883 (9th Cir. 1989) (citation omitted). Therefore, "the appropriate standard for determining ripeness of [a] private party contract dispute[] is . . . whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Principal Life Ins. Co. v. Robinson, 394

F.3d 665, 671 (9th Cir. 2005) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

**B. Rule 12(b)(6)**

Decision on CFFA's Rule 12(b)(6) dismissal motion requires determination of "whether the complaint's factual allegations, together with all reasonable inferences, state a plausible claim for relief." Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1054 (9th Cir. 2011) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

When determining the sufficiency of a claim, "[w]e accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party[; however, this tenet does not apply to] . . . legal conclusions . . . cast in the form of factual allegations." Fayer v. Vaughn, 649 F.3d 1061, 1064 (9th Cir. 2011) (citation and internal quotation marks omitted). "Therefore, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." Id. (citation and internal quotation marks omitted); see also Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555) (stating "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do'").

## II. BACKGROUND

This case concerns several related agreements concerning the lease of solar equipment between a finance company, PNC Equipment Finance, LLC ("PNC"); a joint powers authority formed by California

3

counties and agricultural district associations, California Fairs Financing Authority ("CFFA"); and several California agricultural, livestock, and county fair associations ("Individual Fairs"), including El Dorado. El Dorado's FACC also concerns the "Second Amended and Restated Joint Exercise of Powers Agreement" ("JPA"), which created CFFA. El Dorado "incorporates [into its FACC] as though set forth in full . . . the allegations of [PNC's First Amended Complaint ('PNC's FAC')] . . . solely for the purpose of illustrating the nature of [the claims] in this matter[.]" (El Dorado's FACC ¶ 4.) Relevant allegations from PNC's FAC provide context for decision on the motion.

**A. Master Lease and Use Agreements**

In June 2006, PNC's predecessor in interest, National City Commercial Capital Corporation ("National City"), and CFFA entered into an agreement ("Master Lease"), in which National City agreed to lease solar equipment to CFFA for use by the Individual Fairs; and CFFA agreed to "pay National City periodic installments of principal and interest[.]" (PNC's FAC ¶¶ 13-14.) "[T]o secure [CFFA's] obligations to National City under the [Master] Lease, [CFFA] granted National City a first priority security interest in, among other things, the Use Agreements and User Fees [from the Individual Fairs.]" Id. ¶ 14.

"'Use Agreements' refer to agreements between [CFFA] and [Individual Fairs], . . . pursuant to which [CFFA] granted the right to use a designated portion of the [e]quipment to each [Individual Fair] in return for periodic payments of principal and interest ('User Fees')." Id. "The [s]econd full paragraph of [each] Use Agreement expressly incorporates the [Master Lease] by reference." (El Dorado's FACC ¶ 11.) "Section 1(b) of the Use Agreement states that the Use Agreement and [each Individual Fair's] 'rights [t]hereunder shall at all times be

4

subject and subordinate to the [Master Lease], without the need for any further act or agreement by [an Individual Fair].'" Id.

### B. El Dorado's Use Agreement

"In or about January 2005, [El Dorado] began having discussions with Tom Baker, an Executive Officer of [CFFA] . . . , regarding the possibility of installing [solar] equipment at the [El Dorado County F]airgrounds[.]" Id. ¶ 6. "On several occasions between January 2005 and August 9, 2006, Tom Baker represented to [El Dorado] that contracts concerning [the installation of solar equipment at the El Dorado County Fairgrounds] would require [El Dorado] to enter into a lease-purchase agreement whereby [El Dorado] would lease the equipment for a contract term of 10 years, and . . . would own the . . . equipment" at the end of the contract term. Id. ¶ 7.

"On or about July 3, 2006, [CFFA] sent [El Dorado] a cover letter enclosing both the [Master Lease] and the [Use Agreement] between [CFFA] and [El Dorado]." Id. ¶ 9. "In that letter, [CFFA] confirm[ed] prior verbal representations . . . that [El Dorado] would own the [solar] equipment after the contract term." Id. El Dorado alleges it executed two identical Use Agreements in July and August 2006 (collectively, "Use Agreement"), "based on [CFFA's] verbal and written representations that [El Dorado] would own the equipment after the contract term, effectively purchasing the equipment over ten years[.]" Id. ¶¶ 10-11.

### C. PNC's FAC

PNC alleges CFFA breached the Master Lease beginning in March 2011 "by . . . failing and refusing to make" the required payments. (PNC's FAC ¶ 50.) PNC further alleges that under "Section 20 of the [Master] Lease, upon an event of default, [PNC] has the right to . . .

5

exercise its rights and remedies under the Use Agreements with respect to [the Individual Fairs], including . . . the right . . . to collect the User Fees owing from . . . El Dorado . . . to [CFFA]." Id. ¶ 51.

PNC alleges it notified El Dorado in a May 2011 writing that CFFA defaulted under the Master Lease and that under the terms of the Use Agreement and the Master Lease, El Dorado is required to make payments directly to PNC in the event of CFFA's default. Id. ¶ 108. PNC alleges "El Dorado has failed and refused, and continues to fail and refuse, to pay the User Fees to [PNC]." Id. PNC alleges a breach of contract claim against El Dorado, in which PNC seeks damages in an amount representing unpaid User Fees since March 2011. Id. ¶¶ 188-97. PNC also alleges specific performance and declaratory relief claims, in which it seeks an order directing El Dorado to pay future User Fees directly to PNC. Id. ¶¶ 106-14. PNC alleges similar claims against the other Individual Fairs and CFFA.

**D. El Dorado's FACC**

El Dorado alleges in its FACC that "[a]t all relevant times until mid-November 2011, [El Dorado] understood it would own the [solar] equipment, which was permanently installed in the roof at its fairgrounds, at the end of the Use Agreement term." (El Dorado's FACC ¶ 17.) El Dorado alleges that "[c]ontrary to the multiple [verbal and written] representations by [CFFA] . . . that [El Dorado] would own the equipment after the 10 year contract term, both the [Master Lease] and the Use Agreement state otherwise." Id. ¶ 12. El Dorado further alleges "[it] would not have executed the Use Agreement had it known that . . . [it] would not own the . . . equipment at the end of the contract term." Id. ¶ 17.

//

El Dorado also alleges that "[o]n June 25, 1991, [Solano] County, El Dorado County, 22nd District Agricultural Association, 32nd District Agricultural Association, and 46th [District] Agricultural Association entered into [the JPA]," which created CFFA. Id. ¶ 40. El Dorado alleges:

> The JPA . . . contains an Indemnification clause, . . . which states, in relevant part:
>
>> [CFFA] shall defend, indemnify and hold harmless the Member Entities and their . . . agents . . . from all claims, losses, damages, costs, injury and liability of every kind . . . directly or indirectly arising from the performance of any of the activities of the Authority[.]

Id. ¶ 43. El Dorado alleges it "is an express and intended third party beneficiary of the JPA[,]" since "[t]he JPA . . . identifies El Dorado County as a 'Member Entity'" and "[El Dorado] is expressly identified as an 'agent' of [El Dorado County] in the Agency Agreement between [El Dorado] and [El Dorado County]." Id. ¶¶ 41 & 44. El Dorado alleges it "tendered a written claim to [CFFA] for defense and indemnity pursuant to . . . the JPA" and "[CFFA] . . . reject[ed] [El Dorado's] tender for defense and indemnity in this action." Id. ¶¶ 49-50.

El Dorado also alleges that under "the JPA . . . , [CFFA] was and is required to maintain comprehensive insurance . . . policies, or self-insurance, which name Member Entities and their agents as named insureds[.]" Id. ¶ 59. El Dorado alleges it "tendered a written claim for insurance coverage to [CFFA's] insurance carriers . . . relating to the [claims in this case.]" Id. ¶ 60. El Dorado alleges it "received written correspondence from [California Fairs Services Authority,] an entity that . . . manages the self-insurance pool maintained by [CFFA,] . . . reject[ing El Dorado's] tender for insurance coverage." Id. ¶ 61.

7

El Dorado alleges cross-claims against CFFA for rescission of the Use Agreement, express indemnity, breach of contract, declaratory relief, and constructive trust. El Dorado alleges in its rescission cross-claim that the Use Agreement should be rescinded on the following grounds: "the consideration for the obligation by [El Dorado] to continue to perform under the [Use Agreement] fails . . . through the fault of both [CFFA] and PNC"; "the public interest will be prejudiced by permitting the [Use Agreement] to stand"; and El Dorado executed the Use Agreement based on a mutual or unilateral mistake regarding a material term. Id. ¶¶ 23-36. El Dorado alleges in its express indemnity cross-claim that it "is entitled to an immediate defense from [CFFA], [under] the defense and indemnity provision . . . of the JPA[.]" Id. ¶ 48. El Dorado alleges in its breach of contract cross-claim that CFFA "has breached . . . the JPA" by "reject[ing El Dorado's] request" for defense and indemnity and failing to "maintain[] . . . the insurance . . . required" under the JPA. Id. ¶¶ 57-58 & 62. El Dorado seeks in its declaratory relief cross-claim declarations that "the Use Agreement has been rescinded" and that CFFA "has an ongoing duty to provide [El Dorado] with a defense in this case." Id. ¶¶ 69 & 71. El Dorado alleges in its constructive trust cross-claim that "[CFFA] has retained money paid by [El Dorado] since March 2011 that . . . would have been paid to PNC under the Use Agreement" and requests these funds be held in constructive trust. Id. ¶¶ 75-80.

### III. OBJECTIONS

CFFA filed the Declaration of Rick Wood in support of its dismissal motion, to which El Dorado objects. However, this objection concerns evidence that is not material to decision on the motion; therefore, the merits of this objection need not be reached.

**IV. DISCUSSION**

**A. 12(b)(1) Dismissal Motion**

CFFA argues El Dorado's claims "for [rescission] and declaratory relief are not ripe for adjudication." (Mot. 6:2-3.) CFFA specifically argues:

> [El Dorado] is asking the Court to rescind the Use Agreement . . . because [it] ha[s] not received title [to the solar equipment] prior to full payment and termination of the Use Agreement in 2016. . . . Th[ese] claim[s are] not ripe for adjudication until all payments have been made in full. . . . Without a current controversy regarding title, [El Dorado] may not maintain an action for rescission. Until [El Dorado] satisfies its obligations under the Use Agreement, which will occur in 2016, [El Dorado] cannot know whether CFFA will turn over title to the . . . equipment.

Id. at 5:9-23. El Dorado counters that "CFFA misstates the allegations in the FACC . . . [which] clearly assert that under the relevant contracts, there is no provision to transfer title/ownership to [El Dorado] at the end of the contract term." (El Dorado's Opp'n ("Opp'n") 11:5-12.) El Dorado argues "[t]his case is clearly ripe for adjudication because [El Dorado] recently discovered the problem[:] . . . there is no provision in any of the contract documents to transfer title to the equipment to [El Dorado] at the end of the contract term as represented by CFFA[.]" Id. at 11:27-12:2.

Here, El Dorado seeks rescission of the Use Agreement PNC seeks to enforce against it. El Dorado's rescission cross-claim is based on its allegation that the Use Agreement does not reflect the agreement between the parties, since it does not contain a provision that transfers title in the equipment to El Dorado at the end of the lease term. Since El Dorado's rescission and declaratory relief cross-claims challenge the enforceability of the Use Agreement PNC seeks to enforce

9

against El Dorado, "'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Principal Life Ins. Co., 394 F.3d at 671. Therefore, El Dorado has demonstrated that its rescission and declaratory relief claims are ripe, and this portion of CFFA's motion is DENIED.

CFFA also argues the Court lacks subject matter jurisdiction over each of El Dorado's cross-claims, since El Dorado failed to comply with the Government Claims Act. (Mot. 4:3-5.) However, "noncompliance [with the Government Claims Act] does not divest the trial court of subject matter jurisdiction." State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1239 n.7 (2004) (citation omitted). Rather, "[t]imely claims presentation is an 'element of the plaintiff's cause of action.'" Rhodes v. Sailor, No. CV 08-6419, 2009 WL 2578891, at *4 (C.D. Cal. Aug. 17, 2009) (quoting Shirk v. Vista Unified Sch. Dist., 42 Cal. 4th 201, 209 (2007)). Accordingly, this argument is considered in the decision on CFFA's 12(b)(6) dismissal motion.

**B. 12(b)(6) Dismissal Motion**

**1. Government Claims Act**

CFFA argues each of El Dorado's cross-claims "fail[s] . . . because [El Dorado] failed to comply with the Government Claims Act." (Mot. 4:3-4.) El Dorado counters that it "has . . . sufficiently met its burden . . . of pleading compliance with, or an excuse from, the claims presentation requirements." (Opp'n 9:23-25.) El Dorado argues it has alleged it is exempt from the claims presentation requirement since it qualifies as a "local public entity." Id. at 5:2-5.

"Under the [Government Claims A]ct, . . . no suit for 'money or damages' may be brought against a public entity until a written claim

therefor has been presented to the public entity and either has been acted upon or is deemed to have been rejected." Alliance Fin. v. City & Cnty. of San Francisco, 64 Cal. App. 4th 635, 641 (1998) (citing Cal. Gov. Code § 945.4). "Compliance with the [Government Claims Act] is mandatory; and failure to file a claim is fatal to the cause of action." Hacienda La Puente Unified Sch. Dist. v. Honig, 976 F.2d 487, 495 (9th Cir. 1992) (internal quotation marks and citation omitted). Therefore, "[a] plaintiff suing . . . a local public entity must allege facts demonstrating either compliance with the claim presentation requirement or an excuse for noncompliance as an essential element of the cause of action." Ovando v. Cnty. of Los Angeles, 159 Cal. App. 4th 42, 65 (2008).

Under California Government Code section 905(i), "[c]laims by . . . a . . . local public entity" are exempt from the claims presentation requirement of the Government Claims Act. Further, Government Code section 900.4 states that the term "'[l]ocal public entity' includes a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State." Cal. Gov. Code § 900.4.

CFFA argues "[El Dorado] is not a state agency but by its own admission is a non-profit corporation[, and] . . . the list of exempted entities [in section 905] does not include non-profit corporations." (Mot. 4:22-24.) However, El Dorado alleges in its FACC that it "qualifies as a public agency, district, and public corporation." (El Dorado's FACC ¶ 38.) El Dorado specifically alleges:

> Pursuant to [California Government] Code section[s] 25905 and 25906, and according to the Agency Agreement between [El Dorado] and the County of El Dorado, which deems all [El Dorado] monies to be County monies, [EL Dorado] is a public agency. Although not defined in [Government] Code § 900 et

11

```
                 seq., the term "District" has been defined
                 elsewhere in the Government Code to include "any
                 nonprofit corporation or association conducting an
                 agricultural fair for the county pursuant to a
                 contract between the corporation and association
                 and board of supervisors under the authority of
                 Section 25905.
```

Id.

These allegations support drawing a reasonable inference that El Dorado is exempt from complying with the claims presentation requirement of the Government Claims Act, and CFFA has not demonstrated that El Dorado does not qualify as a "local public entity" as a matter of law. Therefore, this portion of CFFA's dismissal motion is DENIED.

**2. Rescission**

CFFA argues El Dorado's "[claim] for rescission fails [under Rule 12(b)(6)] because" "[u]nder the rescission statute, [California Civil] Code § 1691(b), [El Dorado] must offer to disgorge all benefits it has received [under the Use Agreement]." (Mot. 6:13-17 & 6:22-24.) El Dorado counters that it alleges in its FACC that it will return the solar equipment to PNC or CFFA as a condition of any judgment in its favor. (Opp'n 17:5-8.)

Under California Civil Code section 1691, a party seeking rescission must offer to "[r]estore to the other party everything of value which he has received from him under the contract[.]" Cal. Civ. Code § 1691(b). However, this requirement may be satisfied through the "service of a pleading in an action . . . that seeks relief based on rescission[.]" Id. § 1691.

Here, El Dorado alleges in its FACC that it "stipulates to return possession of the [solar] equipment to [CFFA] or PNC, as determined by the court, upon the issuance of a judgment in [El Dorado's] favor." (El Dorado's FACC ¶ 35.) Since this allegation

12

1  satisfies the requirement that a party seeking rescission must offer to
2  restore to the other party everything of value it received from that
3  party, this portion of CFFA's motion is DENIED.
4       CFFA also seeks dismissal of El Dorado's rescission cross-
5  claim based on unilateral mistake, arguing "[t]here is no unilateral
6  mistake here because there is no allegation . . . that [CFFA] knew or
7  had reason to know of a mistake." (Mot. 7:8-9.) El Dorado counters that
8  "[it] allege[s] that [CFFA] caused the material mistake as to
9  ownership." (Opp'n 19:23-24.)
10      "Unilateral mistake is ground for relief where the mistake is
11 due to the fault of the other party or the other party knows or has
12 reason to know of the mistake." Architects & Contractors Estimating
13 Servs., Inc. v. Smith, 164 Cal. App. 3d 1001, 1007-08 (1985) (citation
14 omitted). Here, El Dorado alleges in its FACC that "[it] was under the
15 mistaken but reasonable belief that [it] would own the photovoltaic
16 equipment at the end of the Use Agreement term" and "[CFFA's] multiple
17 misrepresentations regarding [this] material term caused the mistaken
18 belief by [El Dorado]." (El Dorado's FACC ¶¶ 26 & 33.) A reasonable
19 inference can be drawn from these allegations that El Dorado's alleged
20 "mistake is due to the fault of [CFFA.]" Smith, 164 Cal. App. 3d at
21 1007. Therefore, this portion of CFFA's motion is DENIED.
22      CFFA also argues El Dorado's rescission claim should be
23 dismissed, since "the [Master] Lease and the Use Agreement specifically
24 grant title to the . . . equipment to CFFA . . . [and a]nything that
25 states otherwise is non-probative parol[] evidence." (Mot. 6:26-27.) El
26 Dorado counters that CFFA's "argument [that El Dorado cannot submit
27 parol evidence of mistake] is premature at this stage in the
28 litigation." (Opp'n 18:19-24.) El Dorado further argues that "[a]lthough

extrinsic evidence is generally not admissible to vary or contradict the clear and unambiguous terms of a written, integrated contract, such evidence is admissible to show the contract is subject to rescission for . . . lack of mutual assent." Id. at 18:24-19:3.

"It is the rule that, where the writing itself, through mistake, does not express the intention of the parties who entered into it . . . and the writing does not therefore contain the real contract between the parties, the objection as to parol evidence is without merit." Pac. State Bank v. Greene, 110 Cal. App. 4th 375, 388 (2003) (internal quotation marks and citations omitted). Since El Dorado alleges the Use Agreement should be rescinded on grounds of mistake, CFFA has not demonstrated that El Dorado will not, as a matter of law, be able to introduce parol evidence at trial. Therefore, this portion of CFFA's motion is DENIED.

### 3. Express Indemnity

CFFA seeks dismissal of El Dorado's express indemnity cross-claim, arguing "[El Dorado] has no rights under the JPA[,] because [it is] neither a party nor a third party beneficiary to the contract." (Mot. 8:18-19.) El Dorado counters that it alleges it is a third-party beneficiary of the JPA. (Opp'n 22:1-10.)

"A third party beneficiary may enforce a contract made expressly for [its] benefit." Kaiser Eng'rs, Inc. v. Grinnell Fire Prot. Sys. Co., Inc., 173 Cal. App. 3d 1050, 1055 (1985) (citing Cal. Civ. Code § 1559). "The intent of the contracting parties to benefit expressly that third party must appear from the terms of the contract." Id. (citation omitted). "Nevertheless, the third person need not be named or identified individually to be an express beneficiary. A third party may enforce a contract if it can be shown that he or she is a

member of the class for whose express benefit the contract was made." Id. (citations omitted).

Here, El Dorado alleges the JPA requires "CFFA [to] defend, indemnify and hold harmless the *Member Entities and their . . . agents* . . . from all claims, losses, damages, costs, injury and liability of every kind, nature and description directly or indirectly arising from the performance of any of the activities of [CFFA.]" (El Dorado's FACC ¶ 43 (emphasis added); see id. Ex. 1 (JPA).) El Dorado alleges that El Dorado County is a "Member Entity" of the JPA. (El Dorado's FACC ¶ 41.) El Dorado further alleges it "is expressly identified as an 'agent' of [El Dorado] County in the Agency Agreement between [El Dorado] and [El Dorado] County." Id. ¶ 42. El Dorado also alleges it "is an 'agent' of [El Dorado] County by virtue of Government Code section 25905[,]" id., which provides that a county's "board of supervisors may contract with a nonprofit corporation . . . for the conducting of an agricultural fair, as agent of the county," Cal. Gov. Code § 25905.

These allegations support drawing a reasonable inference that El Dorado is an intended third party beneficiary of the JPA. Therefore, this portion of CFFA's motion is DENIED.

**4. Breach of Contract**

CFFA argues El Dorado "fail[s] to state a cause of action" for breach of contract since it "only alleges one element for breach of contract, damages." (Mot. 9:7-9.) El Dorado counters that "[t]he breach of contract claim expressly realleges all previous allegations, which fulfill each of the requirements with respect to [El Dorado's] allegation that CFFA has breached its contractual duty to defend and indemnify [El Dorado] pursuant to the JPA." (Opp'n 24:13-15.) El Dorado also argues that "[w]ith respect to [its] separate breach of contract

1  [claim] relating to [CFFA's] failure to maintain insurance, [El Dorado]
2  has also properly alleged all necessary elements of its claim." Id. at
3  24:20-21.
4       A "breach of contract [claim] requires a pleading of (1) the
5  contract, (2) plaintiff's performance or excuse for non-performance, (3)
6  defendant's breach, and (4) damage to plaintiff therefrom." Acoustics,
7  Inc. v. Trepte Const. Co., 14 Cal. App. 3d 887, 913 (1971) (citation
8  omitted). Here, El Dorado alleges, *inter alia*: "[it] is an express and
9  intended third party beneficiary of the JPA"; it "requested in writing
10 that [CFFA] fulfill its contractual duty to defend and indemnify [El
11 Dorado] pursuant to the JPA"; CFFA "rejected [El Dorado's] request . . .
12 and has therefore, breached the JPA." (El Dorado's FACC ¶¶ 56-58.) El
13 Dorado also alleges "[CFFA] has not maintained, and does not currently
14 maintain[,] the insurance or self-insured pool coverage as required
15 . . . [by] the JPA[.]" Id. ¶¶ 59-62. These allegations support drawing
16 a reasonable inference that CFFA breached the JPA. Therefore, this
17 portion of CFFA's dismissal motion is DENIED.

18       **5. Constructive Trust**

19       CFFA argues, *inter alia*, that El Dorado's constructive trust
20 claim should be dismissed since "the amounts held by CFFA are amounts
21 owed to PNC . . . [and El Dorado] has no claim to those funds even in
22 the event of rescission of the Use Agreement." (Mot. 10:24-25.) El
23 Dorado does not address this portion of CFFA's motion.
24       "A constructive trust remedy exists to prevent unjust
25 enrichment realized through acts of wrongdoing." Weststeyn Dairy 2 v.
26 Eades Commodities Co., 280 F. Supp. 2d 1044, 1083 (E.D. Cal. 2003)
27 (citations omitted). "A constructive trust may be imposed where the
28 court finds: (1) the existence of a res (property or some interest in

property); (2) the right of a complaining party to that res; and (3) some wrongful acquisition or detention of the res by another party who is not entitled to it." Id. at 1084.

Here, El Dorado alleges "[CFFA] has retained money paid by [El Dorado] since March 2011 that . . . would have been paid to PNC under the Use Agreement." (El Dorado's FACC ¶ 75.) El Dorado further alleges:

> [CFFA] has notified [El Dorado] . . . that it will be declaring bankruptcy. Therefore, [El Dorado] is concerned that the funds that it has paid to [CFFA] since March 2011, which were not . . . paid to PNC, will be dissipated through the bankruptcy proceeding or otherwise.

Id. ¶ 78. However, El Dorado has not alleged facts supporting drawing a reasonable inference that it has a right to the funds it paid to CFFA, which were intended for PNC. Therefore, this portion of CFFA's motion is GRANTED.

## V. CONCLUSION

For the stated reasons, CFFA's 12(b)(1) dismissal motion is DENIED; and its 12(b)(6) dismissal motion is DENIED in part and GRANTED in part. El Dorado is granted ten (10) days from date on which this order is filed to file a Second Amended Cross-Complaint in which it addresses the deficiencies in the dismissed claim.

Dated: September 5, 2012

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge

17